IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY J. DEPOLO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BOARD OF SUPERVISORS OF | : | NO. 14-6689 |
| TREDYFFRIN TOWNSHIP et al. | : | |

MEMORANDUM

Dalzell, J.                                                                                    May 18, 2015

Ham radio aficionado Jeffrey J. DePolo sued the Tredyffrin Township Board of

Supervisors and its members (collectively, the "Board") and the Township's Zoning Hearing

Board of Appeals and its members (collectively, the "ZHBA") over their refusal to let him build

a 180-foot radio tower on his property.[1]  He contends that federal law as articulated in an FCC

regulation and a Pennsylvania state law adopting the federal standard both preempt the

township's antenna height restrictions.  The Board and ZHBA filed separate motions to dismiss

and, for the reasons set forth below, we will grant both motions.

Because we grant the defendants' motions dismissing this action, we will deny as moot

the motion for reconsideration which certain of DePolo's neighbors filed after we denied them

leave to intervene in this action.


I.      **Standard of Review**

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of

proving that a plaintiff has failed to state a claim for relief.  See Fed. R. Civ. P. 12(b)(6); see also

Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  A Rule 12(b)(6) motion tests the

---

[1] With additional antenna, the proposed tower's height would be about 190 feet.  Cmplt., Ex A at
11.

sufficiency of the allegations contained in the complaint and "[t]he question, then, is whether the facts alleged in the complaint, even if true, fail to support the claim." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (internal citation and quotation marks omitted). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), in order to survive a Rule 12(b)(6) motion "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678.

Our Court of Appeals obliges district courts considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) to engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

When deciding a Rule 12(b)(6) motion to dismiss, the Court generally looks to the facts alleged in the complaint and its attachments, without reference to any other part of the record. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir.1994). All well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiff and all inferences must be drawn in his favor. See McTernan v. City of York, PA, 577 F.3d 521, 526 (3d Cir. 2009) (internal quotation marks omitted). To survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative

level on the assumption that the allegations in the complaint are true (even if doubtful in fact)." Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Twombly, 550 U.S. at 555).

## II.   **Factual And Procedural Background**

We draw our recital of the factual background from the plaintiff's complaint and the factual findings in the Zoning Board's decision denying DePolo's application for what effectively would be a 190-foot tower, but granting him a permit for a 65-foot tower. DePolo appended the Zoning Board decision as an Exhibit to the complaint.

On November 25, 2013, the plaintiff prepared and filed a request for a building permit for a "180-foot self-supporting antenna system" in order to pursue his amateur radio operations from his residence on Horseshoe Trail, Malvern, Pennsylvania.[2]  Cmplt. at ¶¶ 14, 24.  Because of the many tall trees on his property and the hilly terrain, that height was the "minimum height necessary" to permit communication on the radio frequencies of interest to him.  Id. at ¶¶ 28, 29. On February 4, 2014, after the Zoning Officer denied his permit, he appealed to the ZHBA requesting a permit for an antenna installation in excess of the 35-foot ordinance limit.  Id. at ¶ 25; see also Ex. A at 26.   The local zoning ordinance at issue, Section 208-18.G of the Tredyffrin Township Zoning Ordinance, establishes area, bulk and height restrictions for the R-1/2 residential district in which DePolo lives and provides that "[t]he height of any building shall not exceed 35 feet."  Ex. A at 11.  Section 208-113, Building height projections, provides in relevant part that "antennas and similar projections shall be included in calculating the height of a building," with certain conditions.  Id.

The ZHBA held public hearings on March 27, April 30, May 5, May 22, and June 26, 2014 to take evidence and consider DePolo's application.  Cmplt. at ¶ 26.  The ZHBA reviewed

---

[2] The plaintiff filed the zoning permit application with his wife but he is the sole plaintiff in this action as she is not a licensed radio operator.  See Pl. Resp. to ZHBA MTD at note 1.

the Zoning Officer's denial of DePolo's permit application and the Officer's offer to allow DePoloto to build a 65-foot tower in recognition of a Pennsylvania law fostering amateur radio operation.  Ex. A at 19.  DePolo contended at the hearing that the Zoning Officer erred in denying the permit for a 180-foot tower.  Id.  He argued that the Federal Communications Commission ("FCC") rule known as PRB-1, Federal Preemption of State and Local Regulations Pertaining to Amateur Radio Facilities, 101 F.C.C. 2d 952 (1985), adopted at 47 CFR §97.15(b), (hereinafter "PRB-1") preempts the Township from restricting antenna height.  Id.  He declined to reduce the height of the proposed tower he sought to build.  Id. at 15.

The ZHBA granted party status to DePolo's Horseshoe Trail neighbors, Schuylkill Township, the National Park Service of the United States Department of the Interior -- representing Valley Forge National Historical Park ("Valley Forge") -- and an association of 800 homeowners.  Id. at 2.  The ZHBA admitted into evidence sixteen exhibits on its own behalf, fifty-eight exhibits on DePolo's behalf, twenty-four exhibits on behalf of the Horseshoe Trail neighbors, one on behalf of Schuylkill Township, and two on behalf of Tredyffrin Township.  Id. at 2-9.

The ZHBA found that the plaintiff's property at 1240 Horseshoe Trail is a 2.9 acre wooded lot located in the Township's R-1/2 residential district.  Id. at 10.  There is also a 200-foot PECO tower and noncommercial 90-foot tower along Horseshoe Trail in Schuylkill Township.  Id.  In the summer of 2000, DePolo purchased a home at 1465 Horseshoe Trail, Schuylkill Township, Chester County, and applied for a building permit to build a 170-foot radio tower on the property, which Schuylkill Township denied on July 26, 2000 and he appealed to the Zoning Board.  Id.  On October 31, 2000, the Schuylkill Township Zoning Board authorized DePolo to build the 170-foot tower and appeals of that decision were dismissed by the Court of

Common Pleas and the Commonwealth Court.  Id. at 10, 11.  DePolo never erected that tower. Id. at 11.  He subsequently bought the present property in Tredyffrin Township.  Id.

The ZHBA found that the tower DePolo seeks to build on his personal property was 15 feet wide at its base and about a yard across between the 120-foot and 180-foot marks and was to be installed about thirty-five to forty feet from the southeast corner of the DePolo home.  Id. at 11, 12.  The proposed tower had no guy wires as it was to be self-supporting and no beacon as it was below the Federal Aviation Administration's 200-foot threshold. Id. at 12.  DePolo, who has held an amateur radio license since 1988, intended to use the tower for non-commercial purposes.  Id.  Clear line of sight works best for all frequencies.  Id.

The ZHBA also made factual findings that DePolo could currently communicate at VHF, UHF and microwave frequencies with two seventeen-foot antennas (one of which was mounted to the top of a ten-foot basketball stand).  Id. at 13.  A 65-foot tower with a seven megahertz antenna would enable him to reach Ireland, Portugal, most of Spain, parts of North Africa and parts of France with a 40% reliability threshold (a term not defined in the ZHBA decision), a threshold that would only increase to 50% were the 180-foot tower permitted.  Id.  It also found that a 65-foot tower with a fourteen megahertz antenna would allow DePolo to reach Belgium, Amsterdam, all of Spain and North Africa with a 40-50% reliability threshold, which would only increase by ten percentage points were he permitted to build the 180-foot tower.  Id.  at 13, 14. The ZHBA also found that amateur radio operators can communicate over the Internet or by using amateur satellite antennas.  Id. at 14.

The ZHBA found that the proposed 180-foot tower was "not compatible" with the surrounding residential neighborhood and "would create an adverse visual impact on the neighborhood."  Id. at 15.  It also found that the tower's "height, mass, and latticework design"

was "of a type universally associated with. . . a factory area or industrialized complex"  and

posed a safety hazard to neighboring properties because its fall radius extended well into those

properties.  Id.  Valley Forge objected to the application because the proposed tower "would be

visible from a key viewpoint in Valley Forge National Historical Park."  Id.  "Long views within

and beyond the Valley Forge National Historical Park are [a] historic resource and an important

aspect of the visitor experience."  Id. at 16.

The ZHBA reviewed state and federal regulations touching on the zoning appeal.  Id.  At

the state level, Section 302 of the General Local Government Code provides that municipalities

regulating antenna height "shall impose only the minimum regulations necessary to accomplish

the legitimate purpose of the municipality," id. (quoting 53 Pa. Cons. Stat. Ann. § 302(a)).

Municipalities may impose necessary safety regulations but must accommodate amateur radio

communications, inter alia, by not restricting radio antenna height to less than sixty-five feet

above ground level.  Id.  Municipalities may also take action to "protect or preserve a historic, a

historical or an architectural district that is established by the municipality or pursuant to Federal

or State law."  Id. (quoting 53 Pa. Cons. Stat. Ann. § 302(c)).

And, at the federal level, the ZHBA considered PRB-1's "policy of limited preemption of

state and local regulation."  Ex. A. at 16.  The ZHBA interpreted this regulation to prohibit "local

municipalities from precluding amateur radio communications", but observed that the FCC

expressly declined to regulate the height of radio antenna towers.  Id. at 16-17.  PRB-1, the

ZHBA concluded, directs municipalities to "accommodate reasonably" such communications

without creating any rights for the amateur radio operators themselves.  Id. at 17.  The FCC

revisited the limited preemption in 1999 and decided not to depart from its policy of "leaving the

specifics of zoning regulation to the local authority, including provisions concerning the height

of an amateur antenna." Id.[3]  The ZHBA also considered the FCC's Second Modification, in which the FCC explained at length what it meant by "reasonable accommodation" and rejected local government efforts to restrict amateur radio communications by restricting certain kinds of antennas not at issue here. Id. at 18.  The ZHBA pointed to the FCC's recognition that "a local community that wants to preserve residential areas as livable neighborhoods may adopt zoning regulations that forbid the construction and installation in a residential neighborhood of the type of antenna that is commonly and universally associated with those that one finds in a factory area or an industrialized complex" and can do so without failing to reasonably accommodate the ham operator. Id.[4]

"This Board looks to these regulations and the interpretations thereof, as expressed by the FCC in the First Modification and Second Modification, for guidance in the application of the limited preemption of local regulation of amateur radio communications," the ZHBA stated.  Id.

The ZHBA found that the R-1/2 residential district in which DePolo lives is designed under Zoning Ordinance §208-16 "to minimize disruption to notable features such as the Exceptional Value Valley Creek Watershed. . . Valley Forge Mountain, and the natural, scenic and historic character of the Township." Id. at 19.  It also found that the reasonable accommodation required under the Second Modification did not "require[] a municipality to allow an amateur operator to erect any antenna [he] desires," id. at 20 (reviewing cases), such as a 180-foot tower "on a property not wide enough to ensure that, if the proposed tower were to

---

[3] Quoting Modification and Clarification of Policies and Procedures Governing Siting and Maintenance of Amateur Radio Antennas and Support Structures, and Amendment of Section 97.15 of the Commission's Rules Governing the Amateur Radio Service, 14 F.C.C.R. 19413, 19416 (1999) (hereinafter "First Modification").
[4] Quoting Modification and Clarification of Policies and Procedures Governing Siting and Maintenance of Amateur Radio Antennas and Support Structures, and Amendment of Section 97.15 of the Commission's Rules Governing the Amateur Radio Service, 15 F.C.C.R. 22151, 22154 (2000) (hereinafter "Second Modification").

fall, it would not impact any neighboring properties."  Id. at 22.

The ZHBA concluded that the Township had made a reasonable accommodation contemplated by the FCC by allowing a 65-foot tower -- which DePolo declined despite "ample evidence" it would permit him to engage in extensive radio communications.  Id. at 23.  The ZHBA also concluded that the Tredyffrin Township Zoning Ordinance limiting the maximum height of structures in the R-1/2 residential district to thirty-five feet was not invalid because DePolo had the opportunity to seek a variance that he withdrew by stipulation.  Id. at 23-24.

On October 23, 2014 the ZHBA issued its decision denying DePolo's application for the 180-foot tower but granting him a permit for a 65-foot tower.  Cmplt. at ¶ 30; see also Ex. A at 26.

On November 21, 2014, DePolo sued the Tredyffrin Board of Supervisors and its individual members as well as the ZHBA and its members.  DePolo alleges that at no time before, during, or after the hearings did the ZHBA or the Board attempt to negotiate with him. Cmplt. at ¶ 27.  He also alleges that a zoning officer not empowered to issue a permit suggested he would be allowed a 65-foot structure but "which, for reasons demonstrated at the hearing. . . would provide for a completely ineffective antenna height and would not allow the operation applicant required."  Id.  He contends, as he did at the hearings, that the height he requested is "the minimum height necessary to permit [him] to achieve his communications goals in the very high frequency [VHF], ultra high frequency [UHF], and super high frequency [SHF] as well as other amateur radio bands, with the privileges granted to [him] by the FCC under his existing license."  Id. at ¶ 28.  He contends he needs the requested height because of the area's tall trees and rolling terrain.  Id. at ¶ 29.

DePolo seeks a declaratory judgment that the Federal Communications Act of 1934, as

8

amended, and the FCC regulation promulgated at 47 CFR §97.15(b)[5] preempt the Tredyffrin

Township zoning ordinances.  He also seeks a judgment declaring that the ZHBA decision

violates the FCC provision and that the Township's zoning ordinance, facially and as applied,

violates Pennsylvania state law governing municipal regulations of antenna height.  He seeks a

court order permitting his 180-foot tower as well as relief under Pennsylvania state statutes.

Cmplt. at 10-13.

On December 31, 2014, the ZHBA filed a motion to dismiss and the Board did likewise

on January 23, 2015.  On January 8, 2015, a group of DePolo's neighbors resident in Schuylkill

Township moved to intervene, as did Schuylkill Township the day after.  We granted both

motions on January 22, 2015.  On March 18, 2015, we denied a different group of DePolo's

neighbors resident in Tredyffrin Township permission to intervene.  They filed a motion for

reconsideration on March 31, 2015 which the ZHBA, its members and Schuylkill Township

support, and which DePolo opposes.


## III.    Discussion

### A.       The ZHBA's Motion To Dismiss

The ZHBA moves to dismiss on several grounds.

It argues that Pennsylvania's statutory scheme for processing challenges to zoning

---

[5] 47 CFR §97.15(b) provides

> Except as otherwise provided herein, a station antenna structure
> may be erected at heights and dimensions sufficient to
> accommodate amateur service communications. (State and local
> regulation of a station antenna structure must not preclude amateur
> service communications. Rather, it must reasonably accommodate
> such communications and must constitute the minimum practicable
> regulation to accomplish the state or local authority's legitimate
> purpose. See PRB-1, 101 FCC 2d 952 (1985) for details.

ordinances provides that the ZHBA, an administrative-adjudicatory agency, is empowered to hear appeals from Zoning Officer decisions, and a landowner dissatisfied with the Board's decision has a right to appeal to the Court of Common Pleas.  Mem. of Law at 8, 9.  It contends we should therefore exercise our discretion not to hear this declaratory judgment action in light of the state and local issues raised and the Pennsylvania General Assembly's comprehensive statutory scheme for zoning appeals.  Id. at 10.  It also argues that we should abstain from hearing a case that would impede the "rightful independence of the state governments."  Id. (quoting R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 501 (1941)).  It further maintains that DePolo erred by joining individual ZHBA members as defendants and failing to join indispensable parties, such as objectants who testified at the zoning hearing.  Id. at 14-17.

Lastly, the ZHBA contends that DePolo has failed to assert a federal preemption claim because the governing federal law on which he rests his claim, the FCC's PRB-1 rulemaking, does not preempt the Township ordinance.[6]  Id. at 17.  It urges that we rely on Williams v. City of Columbia, 906 F.2d 994 (4th Cir. 1990), Evans v. Bd. of Cnty. Comm'rs of Cnty. of Boulder, Colo., 994 F.2d 755 (10th Cir. 1993), and Pentel v. City of Mendota Heights, 13 F.3d 1261 (8th Cir. 1994), to find that the local ordinance is neither facially preempted nor preempted as-applied.  Id. at 22-27.

DePolo responds in opposition that the Tredyffrin Township residential height ordinance is preempted by PRB-1.  Resp. to ZHBA MTD at 14.  DePolo insists that the Township's height limitation for residential structures does not provide the reasonable accommodation required.  Id. at 20.  And he contends that the FCC's First Modification rejected balancing tests to limit

---

[6] As to DePolo's state claims, the ZHBA defendants argue we should decline to exercise supplemental jurisdiction over them because DePolo's federal preemption claim fails and he lacks standing to raise a state law preemption claim.  Mem. of Law at 30-33.  They also seek to strike a portion of the complaint as immaterial.  Because we will dismiss on the basis of DePolo's federal preemption claim, we need not reach these marginal arguments.

antenna height that weigh the amateur radio operator's interests against the municipality's needs. Id. at 21. DePolo also contends that we may hear his state law claims because they arise from a common nucleus of operative facts. Id. at 25. He maintains that Pennsylvania enacted Section 302 to give amateur radio enthusiasts "all the protections of the federal regulation," id. (emphasis omitted), while imposing a 65-foot antenna height minimum on municipalities. Id. "Since the Federal preemption claim is valid on its face," he claims, we may assert jurisdiction over his ancillary claims as well.[7] Id. at 29. DePolo also contends that he has properly joined the members of the ZHBA.[8] Id. at 27-29. Finally, he urges that we grant him an injunction because remand to the ZHBA would be futile. Id. at 38.[9]

In reply, the ZHBA defendants point out that DePolo raises factual allegations not pled in the complaint[10] and misstates Pennsylvania's "unique system of zoning, which provides no opportunity for government bargaining with applicants." Reply at 1. In a somewhat counter-intuitive reversal, the ZHBA reply argues that, because Pennsylvania's statutory scheme gives it no authority to engage in negotiations and grants the Board no authority to issue directives to the ZHBA, we should therefore not consider decisions regarding PRB-1 from other Circuit Courts

---

[7] "[W]hen the parties present other claims that are so related to claims in the action that they form part of the same case or controversy, a federal court may exercise supplemental jurisdiction over them. Additionally, when matters incident to the disposition of the primary matter arise before a court, the doctrine of ancillary jurisdiction permits district courts to decide them." Bryan v. Erie Cnty. Office of Children and Youth, 752 F.3d 316, 321 (3d Cir. 2014) (internal citations and quotation marks omitted).

[8] DePolo also argues that the ZHBA defendants wrongly claim that the Township classified his residential district such that his property is exempt from 53 Pa. Cons. Stat. Ann. § 302, the Pennsylvania statute governing municipalities' regulation of antenna height. Resp. to ZHBA MTD at 32-37.

[9] In his response in opposition DePolo quotes liberally from PRB-1, First and Second Modifications, but fails to cite appropriately to those documents.

[10] In deciding a Rule 12(b)(6) motion, we must look "only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). We therefore exclude from this Memorandum DePolo's additional allegations in his responses to both motions to dismiss.

but rely only on the text of the regulation itself.  Id. at 5.

### B.      The Board Of Supervisors' Motion To Dismiss

The Board asserts cognate reasons to dismiss DePolo's suit.

First, it contends that the FCC's regulation does not preempt the Commonwealth's zoning laws and, as a result, DePolo fails to state a claim on which relief may be granted.  Board MTD at 7.  It argues that it is well recognized the FCC may preempt state action in three ways: (1) by express language in a Congressional enactment, (2) by implication when a Congressional scheme occupies the legislative field, or (3) by implication because of a conflict with a Congressional enactment.  Id. at 8; see also Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541 (2001) (internal citations omitted).  The Board also maintains that those Circuit courts that have considered whether PRB-1 preempts state or local law have concluded it does not.  Board MTD at 14.

> [S]o long as a municipality makes reasonable accommodations for the construction of an antenna, it does not violate PRB-1.  Here, because [the Board defendants] have attempted to accommodate [DePolo's] request, there is no basis upon which the ordinance in question can be said to be preempted by or violate PRB-1.

Id. at 17.  Observing that DePolo was offered a variance to build a 65-foot tower, which he declined, the Board argues that his "refusal to participate. . . does not create a federal claim."  Id. at 18.

It also argues that DePolo's state law claims should be dismissed because he has not suffered injury (as the Township granted him a variance for a 65-foot tower) and he therefore lacks standing to pursue a claim under Section 302 of the Pennsylvania General Local Government Code.  Id. at 19.  And the Board urges us to exercise our discretion to abstain from hearing this matter under Pullman -- arguing nonetheless that DePolo's federal and state

preemption claims lack merit -- because it maintains that DePolo raises "state law issues subject to state law interpretation that could obviate the need to adjudicate his constitutional claim." <u>Id.</u> at 22, 23.  Specifically, no Pennsylvania Court has yet interpreted Section 302.  <u>Id.</u> at 23. Determining how that law balances amateur radio operators' tower regulation with preservation of Pennsylvania's natural and historic spaces is, the Board argues, "an important state policy that should be left to the state courts to resolve in the first instance."[11]  <u>Id.</u> at 25.

Responding in opposition, DePolo argues that our Court of Appeals held in <u>Izzo v. Borough of River Edge</u>, 843 F.2d 765 (3d Cir. 1988), that district courts may not abstain from considering whether PRB-1 preempts state and local regulation.  Resp. to Board MTD at 10.  He also largely reiterates the arguments he raised in opposition to the ZHBA defendants' motion. He contests the Board defendants' reliance on other Circuit Court decisions.  <u>Id.</u> at 20-22.  He contends that the Township has no ordinance governing amateur radio communications towers, but rather a fixed height limitation that applies to all residential structures, <u>id.</u> at 26, 27, which he contends the FCC's PRB-1 regulation preempts.  <u>Id.</u> at 25.   He also maintains we may consider his state law argument pursuant to Section 302 which "incorporates the federal intent that amateurs have the [antenna] height they can demonstrate is required."[12]  <u>Id.</u> at 34.  Finally, DePolo argues that we have jurisdiction over his ancillary claims because the Township refused to negotiate with him (and actively opposed his application), <u>id.</u> at 40, and his residential district is not exempt from Section 302 as the Board maintains.  <u>Id.</u> at 42.

---

[11] The Board defendants also contend that DePolo duplicatively sued the individual Board members and erroneously failed to join indispensable parties including Valley Forge and the association of 800 homeowners.  Board MTD at 25-28.

[12] DePolo argues that he has properly joined the Board members in their official capacities and joined all necessary parties.  Resp. to Board MTD at 35-38.

C.    **Applicable Law**

We begin our inquiry with DePolo's federal preemption claim that seeks relief through a declaratory judgment.

The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or a decree and shall be reviewable as such. . . . Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

28 U.S.C. §§ 2201-2202.  As the Supreme Court noted in Wilton v. Seven Falls Co., 515 U.S. 277 (1995), "[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," id. at 286.  Because a district court "may declare the right. . . of any interested party," 28 U.S.C. §2201(a) (emphasis added), the Act vests district courts with greater discretion than is permitted under abstention doctrines that limit district courts' latitude to dismiss federal proceedings in light of pending state actions.  See Wilton, 515 U.S. at 286.  With "the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." Id. at 288.  The Act is " 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant,' " id. at 287 (quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)), and it is remedial not jurisdictional.  We must thus establish whether we have subject matter jurisdiction to act.

We have subject matter jurisdiction under our Court of Appeals's teaching in Izzo.

There, an amateur radio operator sought injunctive relief, declaratory judgment, and damages in the district court after a local zoning board denied him a variance to extend the height of his transmission tower.  843 F.2d at 766.  The court, concerned about its jurisdiction, construed Burford v. Sun Oil Co., 319 U.S. 315 (1943), to require its abstention from a suit attacking local zoning laws.  Pre-Wilton, our Court of Appeals vacated and remanded for further proceedings.  It explained abstention is "the exception, not the rule."  Id. at 767.  The Court then considered the FCC order at issue -- the very regulation that DePolo contends preempts state and local regulations here.  "The Commission's order indicates an intent to apply a limited, rather than a total preemption," the Court held.  "However, the order infuses into the proceedings a federal concern, a factor which distinguishes the case from a routine land use dispute having no such dimension."  Id. at 768.  The Court concluded that the "express, narrow, and quite specific federal provision" required the district court to retain jurisdiction and adjudicate the dispute.[13] Id. at 769.  We have power under Wilton to consider DePolo's claims and the motions now before us.

We turn now to PRB-1, the FCC ruling on which DePolo hangs his preemption argument. In PRB-1, a declaratory ruling made at the American Radio Relay League's behest, the FCC recognized the strong federal interest in promoting amateur radio operators, particularly for emergency communication. PRB-1, 101 F.C.C. 2d at 959.  "Upon weighing these interests, we believe a limited preemption policy is warranted. State and local regulations that operate to

---

[13] As stated above, our federalist system recognizes a finite number of preemption doctrines.  See Gade v. National Solid Wastes Management Ass'n, 505 U.S. 88, 98 (1992).  Preemption analysis starts with the assumption that the States' historic police powers are not to be superseded absent Congress's manifest stated purpose, an assumption that "provides assurance that the federal-state balance will not be disturbed unintentionally by Congress or unnecessarily by the courts." Riegel v. Medtronic, Inc., 552 U.S. 312, 334 (2008) (citing Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977)).  However, the Supreme Court has not yet construed how limited federal preemption asserted in an agency's rulemaking fits within that federal-state balance.

preclude amateur communications in their communities are in direct conflict with federal objectives and must be preempted." Id. at 960. At the same time, the agency refused to entirely preempt the field by specifying height limitations or local mechanisms to apply for variances or conditional use permits. Id. Instead, the agency concluded that local ordinances involving "placement, screening, or height of antennas based on health, safety, or aesthetic considerations must . . . accommodate reasonably" amateur radio communications and "represent the minimum practicable regulation" for accomplishing the local purpose. Id.

"The cornerstone on which we will predicate our decision is that a reasonable accommodation may be made between the two sides." Id. at 959.

Our Court of Appeals has not construed PRB-1's limited preemption. Federal courts that have considered PRB-1's preemptive effect have upheld it in two circumstances. See Pentel, 13 F.3d at 1263 (citing cases). A local ordinance that bans or imposes fixed height restrictions on amateur radio antennas runs afoul of PRB-1 and the federal regulation therefore facially preempts such local regulation. See, e.g., Evans, 994 F.2d at 976-77; see also Bodony v. Inc. Village of Sands Point, 681 F. Supp. 1009 (E.D.N.Y. 1987) (voiding building ordinance's absolute height limitation as preempted by PRB-1). Second, PRB-1 may preempt a zoning ordinance that is not applied in a way that reasonably accommodates amateur radio communications. But the courts have also concluded that PRB-1's limited purpose is to promote the federal interest in amateur radio operations, not to grant an individual operator a right to erect any antenna he chooses. Howard v. City of Burlingame, 937 F.2d 1376, 1380 (9th Cir. 1991).

Regrettably, the FCC offers little guidance about "reasonable accommodation" in the context of local zoning ordinances.

> [W]e recognize that a local community that wants to preserve residential areas as livable neighborhoods may adopt zoning regulations that forbid the construction and installation in a residential neighborhood of the type of antenna that is commonly and universally associated with those that one finds in a factory area or an industrialized complex. Although such a regulation could constrain amateur communications, we do not view it as failing to provide reasonable accommodation to amateur communications.

Second Modification, 15 F.C.C.R. at 22154.

As noted, which "reasonable accommodation" shields a municipality from coverage of the FCC's limited preemption has not to date come before our Court of Appeals. But we find the reasoning of other Courts of Appeals persuasive as to the steps a municipality must take with minimum practicable regulation to reasonably accommodate an amateur radio operator. The Eighth and Ninth Circuits adopted a three-part prong approach under which "a city [is] free to deny an antenna permit as long as it has considered the application, made factual findings, and attempted to negotiate a satisfactory compromise with the applicant." Howard, 937 F.2d at 1380 (cited with approval in Pentel, 13 F.3d at 1264). The Tenth Circuit in Evans similarly cited as signs of a municipality's reasonable accommodation the three hearings at which evidence was taken from the ham operator, his neighbors and experts in ham radio operation and real estate, as well as the number of alternative antennas and sites considered. Evans, 994 F.2d at 762.

The Eight Circuit flat-footedly held that "[a]pplication of this reasonable accommodation standard. . . does not require the city to allow the amateur to erect any antenna [he] desires." Pentel, 13 F.3d at 1264. We find this teaching -- rooted in common sense -- persuasive. Indeed, a district court found a municipal planning commission reasonably accommodated an applicant by "carefully considering the relevant law, offering compromise solutions, ordering an independent assessment of the application, and making detailed findings of its reasons for

denying the application."  Bosscher v. Township of Algoma, 246 F. Supp. 2d 791, 802 (W.D. Mich. 2003) (where a planning commission held hearings, considered expert testimony, offered the applicant alternatives, and found that he could enjoy "very suitable coverage" with a shorter tower and repeater or a more powerful transmitter).  As a result, the district court in Bosscher held that PRB-1 did not preempt the Township's actions and dismissed the applicant's federal suit.

By contrast, a planning board demonstrates its inflexibility by making unreasonable demands -- for example, restricting the applicant's tower operation to nighttime or requiring him to spend thousands of dollars on vegetative screening (after the applicant accommodated previous requests for site proposals and liability insurance, and on his own initiative agreed to lower the tower when not in use).  See Palmer v. City of Saratoga Springs, 180 F. Supp. 2d 379, 385 (N.D.N.Y. 2001).  The Court in Palmer reasoned the planning board had not reasonably accommodated the applicant as PRB-1 requires because it did not attempt to come to a satisfactory compromise with him.  Id. at 386.  It declared the city's ordinance preempted and ordered the planning board to grant the application with the conditions the applicant had already agreed to.  Id.

At a minimum, then, a municipality reasonably accommodates a ham radio operator when it considers his application, holds public hearings, makes factual findings and seeks a compromise.  At the same time, the FCC's exhortation that reasonable accommodation be made "between the two sides" suggests that the applicant, too, must compromise, the more so since its limited preemption doctrine expresses a federal, not individual, interest.

Turning to the facts DePolo alleges, there is no question that the Township of Tredyffrin took steps to reasonably accommodate him.   To begin with, the Township demonstrated that the

Township's building height ordinance is not rigidly inflexible since the ZHBA exercised its authority to grant DePolo a permit for a 65-foot tower.  We agree with the defendants that the ordinance is not, accordingly, facially preempted.

What's more, the ZHBA considered DePolo's application during the course of hearings held on five days over three months at which it took testimony from the applicant, neighbors and a neighborhood association, as well as interested parties such as the National Park Service and experts who were able to discuss the communications range of differently configured antennas. It made factual findings about DePolo's proposed tower in comparison with other industrial structures in the neighborhood -- both as to its physical presence and broadcast reach -- and it reviewed over one hundred exhibits admitted into evidence.  At the conclusion of the proceedings, the ZHBA offered DePolo a 65-foot tower permit as a compromise.

As to whether the parties engaged in negotiations, DePolo contends that the Township did not offer to negotiate with him (and, he suggests, actively opposed him) and that he requires a 180-foot tower, not a 65-foot one which he claims is a "completely ineffective antenna height." Compl. at ¶ 27.  The Township is silent as to any efforts to negotiate.  The ZHBA takes pains to point us to Pennsylvania statutes which block a zoning hearing board from initiating or participating in mediation.  See Pennsylvania Municipalities Planning Code, Act of 1968, P.L. 805, No.247 as reenacted and amended, Art. IX, Zoning Hearing Board and other Administrative Proceedings, Section 908.1.

Whether the ZHBA offer of a permit for a 65-foot tower shows enough spirit of compromise is not a question we need answer because the FCC's requirement for reasonable accommodation requires both sides to strive for accord.  PRB-1 does not oblige any Township to give DePolo the tower height he chooses.  Indeed, its focus on the federal interest in radio

communications appears amply met here on the face of the ZHBA's factual findings, by DePolo's existing antenna and the offer of a permit for a 65-foot tower.  DePolo, by his own admission, took no steps to meet the Township part way.  Instead, he inflexibly demanded a permit for a 180-foot tower.    And his subsequent decision to withdraw his permit application short-circuited the process.   We find that the Township's proposed permit for a 65-foot tower sought to reasonably accommodate DePolo and his decision to insist on his way or the highway does not satisfy the FCC's accommodative approach.  To find otherwise would encourage disappointed or disaffected applicants to try to end-run established process and sabotage negotiations they deem unfavorable by seeking redress in federal court.

We will not, therefore, declare that PRB-1 preempts Tredyffrin's zoning ordinance or the ZHBA's October 23, 2014 decision.  We will grant the defendants' motions and dismiss DePolo's complaint, concluding that he cannot invoke the FCC's limited preemption doctrine when he himself obdurately thwarted the very reasonable accommodation that the FCC urges on applicants and municipalities alike.  Because we dismiss DePolo's federal claim, we decline to exercise supplemental jurisdiction over his state-law claims.

Nonetheless, we again take further guidance from the Eighth Circuit and "exhort the parties to work together to arrive at a satisfactory solution."  Pentel, 13 F.3d at 1266.

**IV.**   **Conclusion**

For the reasons detailed above, we dismiss DePolo's federal claims.  We also decline to exercise supplemental jurisdiction over his state law claims.  As we are dismissing this matter, we deny as moot the would-be interveners'' motion for reconsideration.

An appropriate Order follows.

BY THE COURT:

_/s/ Stewart Dalzell, J.
Stewart Dalzell, J.